**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DAVID L. MOHORCIC, | ) | |
| | ) | Civil Action No. 11 - 575 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Chief Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| DAVID HOGUE, *et al.*, | ) | |
| | ) | ECF No. 46 |
| Defendants. | ) | |

**MEMORANDUM ORDER**

This case is before the Court on the Motion to Dismiss filed by Defendants Robert
Crouse and John Wetzel.  (ECF No. 46.)  For the following reasons, the Motion will be granted.

**I.      Background and Procedural History**

Plaintiff, David L. Mohorcic, filed a Complaint on May 3, 2011, against numerous
employees of the Armstrong County Jail ("ACJ").  (ECF No. 3.)  The Complaint alleged, *inter
alia*, unconstitutional conditions of confinement in the ACJ in violation of the Eighth and
Fourteenth Amendments to the United States Constitution.   Plaintiff filed an Amended
Complaint on December 13, 2012, wherein he asserted various other claims against the ACJ
Defendants in addition to those previously asserted and sued four additional Defendants,
including Defendants Robert Crouse ("Crouse") and John Wetzel ("Wetzel"), based on an
alleged contract between the Pennsylvania Department of Corrections and Armstrong County
whereby prisoners in state custody were to be housed in the ACJ.  (ECF No. 39.)  Essentially,
Plaintiff alleges that this contractual arrangement caused overcrowding in the ACJ which, in

1

turn, has led to the poor conditions of confinement to which he has allegedly been subjected. Defendants Crouse, Comptroller for the Pennsylvania Department of Corrections, and Wetzel, Secretary of the Pennsylvania Department of Corrections, filed a Motion to Dismiss along with a supporting brief on February 21, 2012.  (ECF Nos. 46, 47.)   Plaintiff filed a response in opposition to the Motion on March 7, 2012.  (ECF No. 52.)

## II.      Plaintiff's Allegations

According to Plaintiff's Amended Complaint, on August 9, 2009, Defendants Crouse and Wetzel, along with the President of the Armstrong County Prison Board, Defendant Richard Fink ("Fink"), and Armstrong County Commissioners, Defendants James Scahill ("Scahill") and Patricia Kirkpatrick ("Kirkpatrick"), signed an agreement to house state prisoners in the ACJ due to a shortage of bed space in the Pennsylvania state correctional institutions.  (ECF No. 39 at 3 ¶ 1.)  Per the agreement, state prisoners were transferred to the ACJ on August 24, 2009, at which time the ACJ experienced an immediate crisis of overcrowding.  (ECF No. 39 at 4 ¶¶ 3, 4.) Plaintiff was admitted into the ACJ on March 10, 2010, and upon arrival he was strip and cavity searched and placed in the classification unit for mandatory 72-hour confinement.  (ECF No. 39 at 4 ¶¶ 5, 6, 7.)  He was later transferred to a cell and assigned to a cot.  (ECF No. 39 at 4 ¶ 8.)

Plaintiff alleges that he was subjected to strip and cavity searches upon returning from hearings on March 17, 2010, March 24, 2010, May 14, 2010, and May 17, 2010.  (ECF No. 39 at 5 ¶¶ 9, 11, 12, 15.)  On March 20, 2010, he was transferred to a cell and assigned to a cot, where he remained until May 17, 2010.  (ECF No. 39 at 4 ¶ 10.)  During that time, Plaintiff claims that he was "forced to endure disgusting, degrading and unconstitutional conditions."  (ECF No. 39 at 5-6 ¶ 13.)   He claims that his cot was directly next to the toilet and that his bedding was constantly splashed with urine.  (ECF No. 39 at 6 ¶ 14.)  He claims that he was tripped over by

the other inmates in the cell and also claims that because his cot blocked the entrance and exit to the cell the inmates stepped on his bedding which caused confrontation.  (ECF No. 39 at 6 ¶ 14.)

Plaintiff was released from custody on May 17, 2010, but arrested on probation violations and transported back to the ACJ on June 9, 2010.  (ECF No. 39 at 6-7 ¶¶ 15, 17.)  Plaintiff was again strip and cavity searched upon arrival.  (ECF No. 39 at 7 ¶ 19.)  He was seen by medical staff on June 10, 2010, at which time he was issued crutches, an ace bandage and a leg brace due to a small fracture in his knee.  (ECF No. 39 at 8 ¶ 24.)  Plaintiff was then assigned to a bottom bunk in a cell that also contained a cot.  (ECF No. 39 at 8 ¶ 25, 26.)  He claims that while attempting to exit his cell on June 11, 2010, his crutch was obstructed by the cot which caused him to fall and strike his head against the concrete wall.  (ECF No. 39 at 8-9 ¶ 27.)  Plaintiff allegedly lost consciousness and awoke when Defendant Kevin Sheppard ("Sheppard"), former ACJ Lieutenant, came to his aid and told him to go lay down on his bunk.  (ECF No. 39 at 9 ¶ 28, 29.)  He claims to have received a protrusion just above his left temple and suffered vision impairment and dizziness as a result of the incident.  (ECF No. 39 at 10 ¶ 32.)  He states that he pleaded with Sheppard to take him for emergency care but was refused and told that he would be fine and to go lay down.  (ECF No. 39 at 10 ¶¶ 33, 34.)

Plaintiff was released on June 22, 2010, but again arrested on probation violations and transported to the ACJ on June 28, 2010.  (ECF No. 39 at 11 ¶¶ 38, 39.)  He was strip and cavity searched upon arrival and then transferred to a cell where he was again assigned to a cot next to the toilet.  (ECF No. 39 at 12 ¶¶ 41, 42.)  Plaintiff filed grievances and received a response stating that the cots were only temporary.  (ECF No. 39 at 12 ¶ 43.)  He was later assigned to a bunk in the same cell where he remained for approximately two months before being transferred to another cell and assigned to a cot.  (ECF No. 39 at 12-13 ¶¶ 44, 45, 46.)  Plaintiff states that he

was forced to sleep on the cot until December 1, 2010, at which time a bunk became available in the cell. (ECF No. 39 at 13 ¶46.)  However, during a routine cell search on December 27, 2010, "hooch" was discovered and Plaintiff was taken to intake and strip searched before being transferred to the secure housing unit ("SHU").  (ECF No. 39 at 13 ¶¶ 47, 48, 49.)  Plaintiff states that he was placed in the SHU prior to his disciplinary hearing.  (ECF No. 39 at 13-14 ¶¶ 49.)  After thirty days of disciplinary confinement, he was transferred back to his cell and assigned to a cot where he remained for approximately two weeks.  (ECF No. 39 at 14 ¶¶ 50, 51.)

Plaintiff alleges that he requested a prisoner civil rights complaint form but his request was denied by Defendant David Hogue ("Hogue"), Warden of the ACJ.  (ECF No. 39 at 14 ¶¶ 52, 53.)  He subsequently received a *pro se* prisoner civil rights package and prior to filing suit he requested a copy of his inmate account history for purposes of filing a motion to proceed *in forma pauperis*.  (ECF No. 39 at 14-15 ¶¶ 54, 55.)  However, Plaintiff states that his request for his inmate account history was denied.  (ECF No. 39 at 15 ¶ 55.)

Plaintiff states that on April 18, 2011, he sent three complaints to the Warden as part of the grievance procedure and that the following day officers were ordered to search his cell allegedly in retaliation for filing the grievances.  (ECF No. 39 at 15 ¶¶ 56, 57.)  During the search, officers found two bags of water, a piece of electrical tape and eleven bars of single use soap.  (ECF No. 39 at 15 ¶ 58.)  Plaintiff was then taken to intake and strip searched before being placed in the SHU.  (ECF No. 39 at 16 ¶ 59.)  He was given a disciplinary hearing but was allegedly denied the right to present witnesses.  (ECF No. 39 at 16 ¶ 61.)  Instead, he was told that the hearing officer was ordered by the Warden to give him thirty days disciplinary confinement.  (ECF No. 39 at 16 ¶ 61.)  Plaintiff appealed the decision of the disciplinary

hearing officer but did not receive a response for eight business days.  (ECF No. 39 at 16 ¶ 63.)

Plaintiff states that he submitted several grievances regarding the ACJ's inability to follow rules

set forth in their rulebook, all of which were denied.  (ECF No. 39 at 17 ¶¶ 64, 65, 66, 67.)  Once

released from the SHU, Plaintiff was transferred to a cell and assigned to a cot for two days

before being transferred to another cell and again assigned to a cot.  (ECF No. 39 at 18 ¶ 69.)

Plaintiff remained on the cot until June 21, 2011, when he was strip searched and released from

custody.  (ECF No. 39 at 18 ¶ 70.)

Plaintiff was again arrested and transported back to the ACJ on June 24, 2011.  (ECF No.

39 at 21 ¶ 77.)  Upon arrival he was strip and cavity searched and later transferred to a cell where

he was once again assigned to a cot.  (ECF No. 39 at 21 ¶ 79, 80.)  On July 8, 2011, Plaintiff was

placed in the SHU for removing a book from the law library.  (ECF No. 39 at 21 ¶ 81.)  He

claims that it is neither posted in the law library nor stated in the inmate handbook that inmates

are not permitted to remove articles from the law library for any purpose.  (ECF No. 39 at 21-22

¶ 82.)  He alleges that he was not given the opportunity to present a defense or witnesses before

being placed in the SHU.  (ECF No. 39 at 22 ¶¶ 83, 84.)

Plaintiff claims that he was subjected to cruel and unusual conditions of confinement and

denied medical treatment during the time he was incarcerated at the ACJ.  (ECF No. 39 at 22-23

¶ 86.)  He also claims that Defendants failed to adhere to disciplinary hearing procedural rules,

repeatedly subjected him to humiliating strip and cavity searches, retaliated against him for using

the inmate grievance system and filing a civil rights complaint, denied him access to information

regarding his inmate account, denied him access to sunlight except for court transports, and

denied him access to adequate recreation.  (ECF No. 39 at 23 ¶ 86, 87, 88, 89, 90, 91.)  He

requests that the Court issue a permanent injunction ordering the use of cots only in those areas

inspected and approved for safety, that indigent inmates be supplied with items to attain adequate personal hygiene, that only a licensed professional decide wither a medical condition warrants emergency treatment, that a licensed physician or equivalent remain in the facility twenty-four hours a day, and that the ACJ fully abide by all rules set forth in Title 37, Chapter 95 of the Pennsylvania Code.  (ECF No. 39 at 25-26.)

### III.     Standard of Review

When considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), courts must accept all factual allegations in the complaint as true and read them in the light most favorable to the plaintiff.  Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir. 1985).  A complaint must be dismissed pursuant to Rule 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 556 (2007).  "Factual allegations must be enough to raise a right to relief above a speculative level."  Id. at 555.  The court need not accept inferences drawn by the plaintiff if they are unsupported by the facts as set forth in the complaint.  See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997)).  Nor must the court accept legal conclusions set forth as factual allegations.  Bell Atlantic Corp., 550 U.S. at 555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).  Additionally, a civil rights claim "must contain specific allegations of fact which indicate a deprivation of constitutional rights; allegations which are nothing more than broad, simple and conclusory statements are insufficient to state a claim under § 1983." Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 887 (2d Cir. 1987).

Courts generally consider the allegations of the complaint, attached exhibits, and matters of public record in deciding motions to dismiss.  Pension Benefit Guar. v. White Consol. Indus.,

Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).   Factual allegations within documents described or identified in the complaint also may be considered if the plaintiff's claims are based upon those documents.   Id. (citations omitted).   Moreover, a district court may consider indisputably authentic documents without converting a motion to dismiss into a motion for summary judgment.  Spruill v. Gills, 372 F.3d 218, 223 (3d Cir. 2004); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Finally, a court must employ less stringent standards when considering *pro se* pleadings than when judging the work product of an attorney.  Haines v. Kerner, 404 U.S. 519, 520 (1972). When presented with a *pro se* complaint, the court should construe the complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged.  Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003).  In a section 1983 action, the court must "apply the applicable law, irrespective of whether the *pro se* litigant has mentioned it by name."  Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002) (quoting Holley v. Dep't of Veteran Affairs, 165 F.3d 244, 247-48 (3d Cir. 1999)).  *See also* Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [pro se] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.") (quoting Higgins, 293 F.3d at 688).  Notwithstanding this liberality, *pro se* litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim.  *See*, *e.g.*, Taylor v. Books A Million, Inc., 296 F.3d 376, 378 (5th Cir. 2002); Riddle v. Mondragon, 83 F.3d 1197, 2102 (10th Cir. 1996).

## IV.    Discussion

Defendants Crouse and Wetzel have raised various arguments as to why Plaintiff's claims should be dismissed.  For the following reasons, the Court finds that Defendants are entitled to Eleventh Amendment immunity to the extent they are being sued in their official capacity and

that Plaintiff has failed to establish the requisite personal involvement or actual knowledge necessary to state a claim against these Defendants to the extent they are being sued in their individual capacity for violations of federal law. Additionally, the Court finds that Defendants are entitled to sovereign immunity to the extent they are being sued for alleged violations of Pennsylvania state law.

### A.  Section 1983 Liability

#### 1.  Claims against Defendants in their official capacity

Defendants contend that the Eleventh Amendment bars Plaintiff's claims for money damages against them in their official capacities. As an initial matter, Plaintiff's Amended Complaint does not specify whether he seeks relief from Defendants in their official or individual capacities. Nevertheless, the Eleventh Amendment precludes federal court jurisdiction over suits by private parties against states or their agencies unless sovereign immunity has expressly been waived. United States v. Mitchell, 445 U.S. 535, 538 (1980). By statute, the Commonwealth of Pennsylvania has specifically withheld its consent to be sued. See 42 Pa. Cons. Stat. Ann. § 8521(b); see also Laskaris v. Thornburgh, 661 F.2d 23, 25 (3d Cir. 1981). The doctrine of sovereign immunity also extends to a state official in his or her official capacity because "it is not a suit against the official but rather is a suit against the official's office. As such it is no different from a suit against the State itself." Garden State Elec. Inspection Servs. v. Levin, 144 F. App'x 247, 251 (3d Cir. 2005) (quoting Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989)). In Will, the Supreme Court held that a state and state officers acting in their official capacities are not "persons" against whom a claim for money damages under § 1983 can be asserted. Will, 491 U.S. at 64. However, the Eleventh Amendment does not preclude a suit against a state official acting in his or her individual, or

8

personal capacity.  Hafer v. Melo, 502 U.S. 21, 31 (1991); Ex parte Young, 200 U.S. 123, 159-60 (1908); Koslow v. Pennsylvania, 302 F.3d 161, 168 (3d Cir. 2002).  Based on this well-settled law, to the extent Plaintiff sues Defendants Crouse and Wetzel in their official capacities for monetary relief, his claims will be dismissed.

Contrary to claims for monetary damages against state officials in their official capacities, suits against state officials for prospective relief to end an ongoing violation of federal law is an exception to Eleventh Amendment immunity.  See MCI Telecomm. Corp. v. Bell Atlantic-Pennsylvania, 271 F.3d 491, 503 (3d Cir. 2001); see also Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 85, 101 (1984) (acknowledging that section 1983 provides a cause of action against a state official acting in his official capacity to enjoin the official from continuing to violate federal law, since, in that case, the state could not have authorized the official's actions).  However, Plaintiff's Amended Complaint cannot be construed as requesting such prospective injunctive relief against Defendants Crouse and Wetzel, only against the Armstrong County Defendants.  Moreover, even if Plaintiff were to seek such relief, Plaintiff's claims are subject to dismissal because has failed to sufficiently allege personal involvement in the alleged constitutional violations with regard to Defendants Crouse and Wetzel.  Accordingly, such injunctive relief would not be available against these Defendants.

### 2.  Claims against Defendants in their individual capacity

Defendants assert that Plaintiff has failed to demonstrate the requisite personal involvement necessary to establish a claim under 42 U.S.C. § 1983.  For liability under 42 U.S.C. § 1983, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  Each named defendant must be

shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based.  Id.  Indeed, the Third Circuit has stated that

> [a] defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.  Allegations of personal participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

Id. (citations omitted).

Plaintiff claims that Defendants Crouse and Wetzel are liable for the unconstitutional conditions of confinement due to their involvement in signing a contract with Armstrong County that allegedly resulted in overcrowding in the ACJ.  However, the Court agrees with Defendants' argument that Plaintiff has failed to establish the necessary personal involvement to state a claim under section 1983 because his Amended Complaint includes no allegations of involvement in any constitutional infractions and also contains no allegations that Defendants had any knowledge or complicity in the acts Plaintiff alleges violated his constitutional rights.  While Defendants Crouse and Wetzel may have authorized the contract, there is no allegation that they exercised any personal involvement over the particular manner or method by which state inmates were to be housed in the ACJ beyond merely contracting with Armstrong County to perform the task.  Accordingly, Plaintiff's claims for violations of his constitutional rights will be dismissed against Defendants Crouse and Wetzel.

### B.  Liability for violations of Pennsylvania state law

To the extent Plaintiff purports to sue Defendants Crouse and Wetzel for alleged violations of Pennsylvania state law, Defendants assert that these claims are barred by the doctrine of sovereign immunity.  The doctrine of sovereign immunity bars claims that are

asserted against the Commonwealth, its agencies, and Commonwealth employees acting within the scope of their office or employment. *See* Mitchell v. Luckenbill, 680 F. Supp. 2d 672, 681-82 (M.D. Pa. 2010) (citing 1 Pa. C.S. § 2310.)   The Pennsylvania General Assembly has provided nine specific exceptions to the general grant of immunity that relate to: (1) vehicle liability; (2) medical-professional liability; (3) care, custody or control of personal property; (4) Commonwealth real estate, highways and sidewalks; (5) potholes and other dangerous conditions; (6) care, custody or control of animals; (7) liquor store sales; (8) National Guard activities; and (9) toxoids and vaccines. *See* Pa. 42 C.S. § 8522.

To the extent Plaintiff's Amended Complaint can be read to assert violations of Pennsylvania state law, his claims do not fall within one of the specific exceptions to sovereign immunity.[1]   Moreover, it is well-established that sovereign immunity applies to intentional torts as well as negligent torts provided the defendant is acting within the scope of his or her employment. *See* Stone v. Felsman, No. 3:10-0442, 2011 U.S. Dist. LEXIS 125909, 2011 WL 5320738, at *11 (M.D. Pa. Nov. 1, 2011) (collecting cases).   There is nothing in Plaintiff's allegations to suggest that Defendants Crouse and Wetzel were not acting within the scope of their employment when they signed the contract with Armstrong County.  Indeed,

> Under Pennsylvania law, an action falls within the scope of employment if it: (1) is the kind that the employee is employed to perform; (2) occurs substantially within the job's authorized time and space limits; (3) is motivated at least in part by a desire to serve the employer; and (4) if force was used by the employee against another, the use of force is not unexpectable by the employer.

Wesley v. Hollis, No. 03-3130, 2007 U.S. Dist. LEXIS 41562, 2007 WL 1655483, at *14 (E.D. Pa. June 6, 2007).   The actions taken by Defendants were actions that were taken in their

---

[1]       The Court finds no merit in Plaintiff's argument that his claims fall within the care, custody or control of personal property exception to Pa. 42 C.S. § 8522 because inmates are considered "personal property" of the state.

11

capacity as Commonwealth employees and not as private individuals.  Because the record clearly supports the conclusion that Defendants were acting within the scope of their employment when the acts were allegedly committed, they are immune from liability on state law causes of action and these will be dismissed accordingly.  An appropriate Order follows.

**AND NOW** this 17th day of August, 2012;

**IT IS HEREBY ORDERED** that the Motion to Dismiss filed by Defendants Crouse and Wetzel (ECF No. 46) is **GRANTED**.  Plaintiff's claims against these Defendants are hereby dismissed with prejudice.  As such, the Clerk of Court is directed to terminate them from this action.

/s/ Lisa Pupo Lenihan
Lisa Pupo Lenihan
Chief United States Magistrate Judge

cc:  David L. Mohorcic
171 Staley Ct. Rd.
Kittanning, PA  16201

Counsel of record.