# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID L. MOHORCIC, | ) | |
| | ) | Civil Action No. 11 - 575 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Chief Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| DAVID HOGUE, *et al*., | ) | |
| | ) | ECF No. 59 |
| Defendants. | ) | |

## **MEMORANDUM ORDER**

Pending before the Court is a Motion for Summary Judgment filed by the remaining Defendants in this case. Defendants are David Hogue, Matt Roffner, and Kevin Sheppard, who are the Warden and Deputy Wardens of the Armstrong County Jail, respectively. Defendants also include Richard Fink, the President of the Armstrong County Prison Board, and James Scahill and Patricia Kirkpatrick, both former Commissioners of Armstrong County. Defendants filed their motion on April 18, 2013, and, although Plaintiff was given an opportunity to respond, he did not file a response in opposition to the motion. Also, Defendants have informed the Court that Plaintiff failed to appear for his deposition on March 8, 2013, and has not contacted counsel since that time. It appears that Plaintiff has no interest in further pursuing this matter. Nevertheless, the Court has reviewed the pleadings and documents in this case, and, for the reasons set forth herein, finds that Defendants are entitled judgment as a matter of law. Their motion will be granted accordingly.

1

## I. FACTUAL BACKGROUND[1]

Although quite lengthy, the crux of Plaintiff's Amended Complaint is that Defendants are liable for the poor conditions in the Armstrong County Jail ("ACJ"). He alleges that these conditions were created due to inmate overcrowding, in part, because of a contract between the Pennsylvania Department of Corrections ("DOC") and Armstrong County, whereby it was agreed that prisoners in state custody would be housed in the ACJ. Plaintiff describes these alleged unconstitutional conditions in detail but mainly takes issue with having to sleep on a cot in a cell with two other prisoners assigned to the cell's bunk.[2] Because the cots were placed next to the toilet, Plaintiff contends that urine would splash onto his bedding.

Unrelated, Plaintiff also alleges that on June 11, 2010, he was denied medical care when his crutch was obstructed by a cot, which caused him to fall and strike his head on a concrete wall. He states that he temporarily lost consciousness and when he awoke his vision was blurry. He requested medical attention but Defendant Sheppard told him that he would be fine and to just go lay down.

Finally, Plaintiff alleges that he was subjected to humiliating strip and cavity searches upon entering the ACJ.

---

[1] Under the Local Rules of Court for the Western District of Pennsylvania, material facts set forth in a moving party's statement of facts will be deemed admitted for the purpose of deciding a motion for summary judgment "unless specifically denied or otherwise controverted by a separate concise statement of the opposing party." *See* L.R. 56.1(E). Courts in this district strictly apply Local Rule 56 and deem uncontroverted facts to be admitted. *See* Emigh v. Miller, No. 08-1726, 2010 U.S. Dist. LEXIS 74414, 2010 WL 2926213 (W.D. Pa. July 23, 2010) (collecting cases). Because Plaintiff failed to respond to the pending Motion for Summary Judgment or file a "counter" statement of material facts, Defendants' statement of facts as set forth in ECF No. 62 will be admitted as true and correct.

[2] It is unclear from the complaint, but it appears that Plaintiff was assigned to a cot on the following dates: March 20, 2010 to May 17, 2010 (58 days); June 28, 2010 – December 1, 2010 (During this time Plaintiff was assigned to a bunk for approximately two months, so the total time he was assigned to a cot was approximately 126 days); May 20, 2011 – June 21, 2011 (32 days); and June 24, 2011 – July 8, 2011 (14 days).

## II.     STANDARD OF REVIEW

Summary judgment is appropriate if, drawing all inferences in favor of the non-moving party, the record indicates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element to that party's case and for which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317 (1986).  The moving party bears the initial burden of identifying evidence or the lack thereof that demonstrates the absence of a genuine issue of material fact.  National State Bank v. Federal Reserve Bank of New York, 979 F.2d 1579, 1582 (3d Cir. 1992).  Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law.  Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  The inquiry, then, involves determining "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Brown v. Grabowski, 922 F.2d 1097, 1111 (3d Cir. 1990) (quoting Anderson, 477 U.S. at 251-52).  If a court, having reviewed the evidence with this standard in mind, concludes that "the evidence is merely colorable . . . or is not significantly probative," then summary judgment may be granted. Anderson, 477 U.S. at 249-50.  Finally, while any evidence used to support a motion for summary judgment must be admissible, it is not necessary for it to be in admissible form. *See*

Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 324; J.F. Feeser, Inc., v. Serv-A-Portion, Inc., 909 F.2d 1524, 1542 (3d Cir. 1990).

III. DISCUSSION

A. Conditions of Confinement

Plaintiff complains about numerous unconstitutional conditions in the ACJ due to overcrowding as set forth above. This situation is very similar to the one addressed by the Third Circuit in Hubbard v. Taylor, 399 F.3d 150 (3d Cir. 2005) (Hubbard I), where inmates challenged the practice of housing three detainees in cells intended and designed for one-person ("triple-celling") and which required someone to sleep on a mattress that must be placed on the cell floor adjacent to a toilet. Because the plaintiffs in Hubbard were pretrial detainees, they complained that this practice violated the Fourteenth Amendment by depriving them of their liberty without due process of law. Here, however, it is unclear whether Plaintiff was a pretrial detainee or a convicted prisoner during the times he was confined in the ACJ. Thus, it is also unclear whether the protection of the Eighth Amendment's Cruel and Unusual Punishments Clause or the Due Process Clause of the Fourteenth Amendment applies to his conditions of confinement claim.[3] See id. at 164 (stating that claims that arose while a plaintiff was a pretrial detainee must be prosecuted under the Due Process Clause, while claims that arose after he was sentenced are analyzed under the Cruel and Unusual Punishments Clause). While recognizing

---

[3] The Eighth Amendment "was designed to protect those convicted of crimes and consequently the Clause applies only after the State has complied with constitutional guarantees traditionally associated with criminal prosecutions." Whitley v. Albers, 475 U.S. 312, 318 (1986) (citation and internal quotations omitted). Thus, the Eighth Amendment's Cruel and Unusual Punishment's Clause does not apply until "after sentence and conviction." Graham v. Connor, 490 U.S. 386, 392 at n.6 (1989). It imposes a duty on prison officials to provide "humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care." Farmer v. Brennan, 511 U.S. 825, 832 (1994). In Wilson v. Seiter, 501 U.S. 294 (1991), the Supreme Court set forth the standard for alleged violations of the Eighth Amendment while addressing non-medical conditions of confinement. The Court held that the prisoner must prove that prison officials acted with deliberate indifference that deprived him of "'the minimal civilized measure of life's necessities.'" Id. at 298-99, 301-05 (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)).

that the case law is unclear as to whether the Fourteenth Amendment provides some measure of additional protections for pretrial detainees above what the Eighth Amendment affords convicted prisoners,[4] the Court will analyze Plaintiff's claim under the Due Process Clause because the Third Circuit Court of Appeals has hinted that a pretrial detainee's "due process rights are at least as broad, if not broader, than his rights under the Eighth Amendment." Tapp v. Proto, 404 F. App'x 563, 566 (3d Cir. 2010) (citing Fuentes v. Wagner, 206 F.3d 335, 344 (3d Cir. 2010)).

Under the Fourteenth Amendment, when a pretrial detainee complains about the conditions of his confinement, courts are to consider whether the conditions "amount to punishment prior to an adjudication of guilt in accordance with law." Hubbard I, 399 F.3d at 158. When evaluating whether such conditions violate due process, "we must ask, first, whether any legitimate purposes are served by these conditions, and second, whether these conditions are rationally related to these purposes." Hubbard v. Taylor, 538 F.3d 229, 232 (3d Cir. 2008) (Hubbard II) (quoting Union County Jail Inmates v. Di Buono, 713 F.2d 984, 992 (3d Cir. 1983)). "In assessing whether the conditions are rationally related to the assigned purposes, we must further inquire as to whether these conditions cause inmates to endure such genuine privation and hardship over an extended period of time that the adverse conditions become excessive in relation to the purposes assigned to them." Di Buono, 713 F.2d at 992 (internal quotation and brackets omitted).

---

[4] The standard to apply when evaluating conditions of confinement imposed on pretrial detainees is not clear and has been the subject of recent scholarly debate. Catherine T. Struve, *The Conditions of Pretrial Detention*, 161 U. PA. L. REV. 1009 (2013). However, the Supreme Court and the Third Circuit have unequivocally held that the Fourteenth Amendment due process standard is at least as protective as the Eighth Amendment cruel and unusual punishment standard when analyzing conditions of confinement. *See* Bell v. Wolfish, 441 U.S. 520, 545 (1979) ("pretrial detainees, who have not been convicted of any crimes, retain at least those constitutional rights that we have held are enjoyed by convicted prisoners"); Stevenson v. Carroll, 495 F.3d 62, 70 (3d Cir. 2007) ("the protections due to sentenced inmates provide a floor for what pretrial detainees may expect").

With respect to the triple-celling of pretrial detainees in Hubbard, the Third Circuit expressly recognized the validity in a county's interest in the "management of [an] overcrowded institution." Hubbard II, 538 F.3d at 233 (citing Union County, 7134 F.2d at 993). Finding this to be a legitimate purpose for triple-celling, the court next considered whether the triple-celling of pretrial detainees was rationally related to this interest and also examined whether these conditions were excessive in relation to the management of overcrowding. Id. In doing so, it looked to the "totality of the conditions[,]" id. (quoting Hubbard I, 399 F.3d at 160), and evaluated factors such as "the size of the detainee's living space, the length of confinement, the amount of time spent in the confined area each day, and the opportunity for exercise" id. (quoting Ferguson v. Cape Girardeau County, 88 F.3d 647, 650 (8th Cir. 1996)). Even though the plaintiffs in Hubbard spent "a substantial amount of time on floor mattresses," the court ultimately found that they "were not subjected to genuine privations and hardship over an extended period of time" partly due to the fact that they had access to 3,900 square foot dayrooms and the record did not substantiate their claims that the use of the floor mattresses "resulted in disease or the splashing of human waste upon them." Id. at 235. The court also noted the efforts made by the jail to improve conditions. Id.

As to the first inquiry, the law is clear that Defendants had a legitimate interest in managing the overcrowded conditions at the ACJ. As for the second prong, based on the record before this Court, there is no evidence to suggest that the conditions experienced by Plaintiff were any worse than those endured by the plaintiffs in Hubbard. The plaintiffs in Hubbard spent between three and seven months on floor mattresses while waiting for a bunk bed to become available. The longest period of time Plaintiff spent assigned to a cot was approximately four months. The only deplorable condition alleged in the Amended Complaint relates to the

splashing of urine on his bedding but the rest of the record is silent as to how much time Plaintiff had to spend in his cell and whether he had any opportunity for exercise. Like the plaintiffs in Hubbard, the record does not substantiate Plaintiff's allegation; and, even if it did, this allegation, *in and of itself*, falls short of establishing a violation of Plaintiff's due process rights. *See*, *e.g.*, Johnson v. Harron, No. 07-0023, 2008 U.S. Dist. LEXIS 92650, 2008 WL 4934042, at *9 (D. N.J. Nov. 13, 2008) (finding that the inmate plaintiff, who was forced to sleep on the floor for almost six months and during that time was splashed with urine, could not establish an Eighth Amendment violation). Therefore, Defendants are entitled to judgment as a matter of law.

### B. Denial of Medical Care

Plaintiff alleges that on June 11, 2010, he was wrongly denied medical care when his crutch was obstructed by a cot and he tripped, hitting his head on the concrete wall. He complains that he temporarily lost consciousness and when he awoke his vision was blurry. He requested medical care but was told by Defendant Sheppard that he was fine and to just lie down.

The Eighth Amendment protects individuals against the infliction of "cruel and unusual punishments."[5] U.S. CONST. amend. VIII. This protection, enforced against the states through the Fourteenth Amendment, guarantees incarcerated persons humane conditions of confinement. In this regard, prison officials must ensure that inmates receive adequate food, clothing, shelter

---

[5] As previously noted, it is unclear whether Plaintiff was a pretrial detainee or a sentenced inmate during the time he was allegedly denied medical care after his fall. *See supra*. Claims of denial of medical treatment by pretrial detainees are "evaluate[d] . . . under the Due Process Clause of the Fourteenth Amendment, which prohibits the defendants from undertaking acts that amount to punishment." Thrower v. Alvies, 425 F. App'x 102, 104 (3d Cir. 2011) (citing Hubbard v. Taylor, 399 F.3d 150, 166 (3d Cir. 2004)). However, the Third Circuit has held that the "Due Process Clause provides pretrial detainees with at least as much protection as is afforded to prisoners raising denial-of-medical-treatment claims under the Eighth Amendment." Id. at 105 (citing Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 581-82 (3d Cir. 2003)). Thus, courts apply the Eighth Amendment standard to determine whether a pre-trial detainee's rights were violated in the context of denial of medical care claims. *See* Lenhart v. Pennsylvania, No. 13-1173, 2013 U.S. App. LEXIS 11723, 2013 WL 2479409 (3d Cir. June 11, 2013) ("[A] pretrial detainee is not entitled to Eighth Amendment protections, but nevertheless a pretrial detainee's claim of inadequate medical care is evaluated under the same standard as a convicted prisoner's Eighth Amendment claim of inadequate medical care[.]") (citing Natale, 318 F.3d at 581).

7

and medical care, and must "take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)). To state an Eighth Amendment violation in the context of medical treatment, an inmate must demonstrate two elements: (1) he was suffering from a "serious medical need," and (2) prison officials were deliberately indifferent to the serious medical need. Gamble v. Estelle, 439 U.S. 897 (1978). The first showing requires the court to objectively determine whether the medical need was "sufficiently serious." A medical need is "serious" if it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), *cert. denied*, 486 U.S. 1006 (1988). The second prong requires the court to subjectively determine whether the officials acted with a sufficiently culpable state of mind. Deliberate indifference may be manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, a denial of prescribed medical treatment, or a denial of reasonable requests for treatment that results in suffering or risk of injury. Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993).

Pursuant to this standard, Plaintiff's injuries, while perhaps mildly uncomfortable, are not the type of injuries that are sufficiently serious enough for purposes of the Eighth Amendment. Indeed, courts have found the same with similar injuries. *See e.g.*, Vilchis v. City of Bakersfield, No. 1:10-cv-00893, 2012 U.S. Dist. LEXIS 4447, 2012 WL 113747, at *12 (E.D. Ca. Jan. 13, 2012) (loss of consciousness, abrasions and contusions to the head and face, with some bleeding do not amount to a "serious medical need"); Ruffino v. Gomez, No. 05 Civ. 1209, 2006 U.S. Dist. LEXIS 83928, 2006 WL 3248570, at *7-8 (D. Conn. Nov. 8, 2006) (bruises, scrapes, scratches, and momentary difficulty seeing and breathing, where prisoner failed to present

8

evidence of pain or other long-lasting effects, did not constitute serious medical condition). Moreover, Plaintiff has not alleged that he suffered any more than just minimal temporary discomfort or that he later complained about any pain or lingering injuries that he suffered as a result of the fall; nor has Plaintiff alleged that he in fact suffered any lasting or permanent injuries as a result of not receiving medical treatment. In short, there is nothing in the record from which a reasonable jury could find that the objective component of a deliberate indifference claim has been satisfied. This is so even assuming Defendant Sheppard deliberately dismissed Plaintiff's requests for medical care without regard to his health or safety. Therefore, Defendants are entitled to judgment as a matter of law.

### C. Cavity Searches

Plaintiff makes numerous allegations that he was subjected to cavity searches upon entering the ACJ. However, as Defendants correctly note, with the exception of one instance, Plaintiff does not state who performed the searches on any specific date referenced in the Amended Complaint. The only reference to a specific individual is Correctional Officer Michael Bell, whom Plaintiff alleges stripped and cavity searched him on "numerous occasions," but he does not reference any dates. Defendants have submitted the affidavit of CO Bell wherein he attests that he never cavity searched Plaintiff. Additionally, Plaintiffs have submitted the affidavit of Defendant Warden Hogue who attests that cavity searches have never been permitted during his employment at the ACJ.

Defendants have presented this Court with evidence showing that cavity searches are not allowed and do not occur at the ACJ, and because Plaintiff has failed to respond in opposition to the motion for summary judgment, he has not come forward with any evidence to suggest otherwise. The Court, therefore, must take the factual record as presented by the Defendants,

and because there is no genuine dispute of material fact with respect to this issue, Defendants are entitled to judgment as a matter of law.

An appropriate Order follows.

**AND NOW** this 21st day of November, 2013;

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (ECF No. 59) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of Court mark this case **CLOSED**.

**AND IT IS FURTHER ORDERED** that pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, Petitioner has thirty (30) days to file a notice of appeal as provided by Rule 3 of the Federal Rules of Appellate Procedure.

_____
Lisa Pupo Lenihan
Chief United States Magistrate Judge

cc: David L. Mohorcic
 156 Grant Avenue
 Vandergrift, PA 15690
 *Via First Class Mail*

 Counsel of Record
 *Via ECF Electronic Mail*